The Honourable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honourable Court may give their attendance and they shall be heard. God save the United States of America and this Honourable Court. Court is in session. Today's case will be called as previously announced and the times will be as allotted to counsel. The case today is Fred Melnyk v. Town of Little Compton et al. Appeal No. 22-1320. Attorney Dio, please introduce yourself for the record and proceed with your argument. Thank you. I am Attorney Sonia Dio. May it please the Court, I am here arguing for the appellate Fred Melnyk. I would request to reserve two minutes for rebuttal. You can have two minutes. Thank you. I just want to say first before I start off here that I am very honoured to be before three women jurists today. I make note of that and I am really glad the First Circuit has that. I would like to begin my argument by talking about the plaintiff's breach of contract claim. Mr. Melnyk was a firefighter and he went out suffering an injury and part of the agreement between himself and the town becomes this addendum that the union and the town enter into. In that addendum, the town is required to have its own physician, make a recommendation as to who a neutral physician would be if in fact the town's physician and Mr. Melnyk's physician disagreed on whether or not Mr. Melnyk should receive IOD benefits. In other words, they disagreed as to whether or not Mr. Melnyk's injury was related to the performance of this job as a firefighter. Ms. Dio, the town's physician refused to make a recommendation and therefore they went to another agreement that the union entered into with the town. Well, your honour, the town's physician, the only evidence on what the town's physician did is in an email. There's no testimony that actually supports that position. When you say email, you mean an email of Dr. Kava's note? No. What I mean is, if you were to go to page 295 of the record, I deposed Mr. Munchen. In that deposition, he indicated that he was not the individual that had any contact with the physician who allegedly made the statement that he was not going to participate in selecting this neutral party. There's no other proof in the record that that ever happened. There is an email where he says that to the union, but there's no competent proof that the doctor ever said he wasn't going to do that. Putting that aside for a second, the doctor was within control of whether it's the interlocal or the town. They could have demanded that the doctor did that. We have nothing to show that they did that and therefore their failure to comply with that provision is somehow excused. The district court found that there was a possibility here. I'd suggest that that in and of itself... There still was an additional agreement entered into after whatever happened happened that the court said superseded the original MOA. So are you saying that the second MOA was invalid? What I'm saying is that the second MOA should never have been entered into. There should have been no requirement for that. I'm sorry, Your Honor. But it was. Are you saying that that MOA was void somehow? I am. What I'm saying is that it's the town's bad faith conduct that resulted in that second MOA having to have been entered into. Ten and a half minutes remaining. Four and a half minutes. Thank you. There still was an MOA. So why aren't you suing the union for breach of a fiduciary obligation to your client if there was nonetheless a subsequent agreement entered into between the town and the union and no one is disputing that that agreement was entered into? I can't dispute that that agreement was entered into. That's true, Your Honor. I can dispute the reasons for that having to happen and I take issue with the district court's decision and statement that compliance with that provision is excused because of impossibility. There's no impossibility here. There's no proof of that in the record. All that exists is an email between Mr. Munchen and the union saying that, you know, he won't participate. We don't know that to be a fact. With that, I say there is a breach of the contract. I'm sorry. Did you depose Dr. Calva? I don't see anything in the record suggesting that you did. I did not depose Dr. Calva. That I did not do. That's correct, Your Honor. I do make the issue. I still don't understand the legal significance of your argument because it somehow suggests that the second MOA was not a valid contract or that your client has something other than breach of a fiduciary obligation, cause of action, as opposed to some, I mean, you haven't pled third-party beneficiary cause of action. Well, I did plead that it was a breach of the contract and as a result that he's a third-party beneficiary of that contract, absolutely. I believe that's pled and count one of the complaints. And in this instance, I don't believe that there can be a very large dispute that the first memorandum of agreement that was entered into was for the benefit of Mr. Malik. It was specifically dealing with his request and petition for IOD benefits and how that matter would be handled. I don't remember there being a specific argument in your brief as to why there was, as to how your client met the elements of a third-party breach of contract. I know that it's a very brief section, Your Honor. I know that I cited to a couple of cases and specifically set forth how it is that that applied. I also know that the district court in its underlying decision had assumed that he was the beneficiary of a third-party contract. I do believe that's developed and in the record, Your Honor. I apologize. I am – oh, I believe I'm over time. You have another minute and a half, Judge. I'm sorry. I can't – my apologies. If the court were to find that there's a breach of contract, I'd further suggest that there's a breach of the implied covenant of good faith and fair dealing. And I think that there's a pattern of conduct here that suggests that it was, first of all, an intentional breach, and further that they were doing everything they could – of the collective bargaining contract or that there was a breach of the MOA, the first MOA? Bargaining. Okay, only that one? Yes, ma'am. Okay. That was breached. And the breach was forced by the town, by their own conduct, and further evidence of that – And what is the relevance in your mind of the second contract which superseded the first one? In my mind, the second contract should never have existed, Your Honor. But it did. It did exist, but the two physicians should have, as stated in that contract, gotten together and decided on the third physician who would make the decision on whether Mr. Melnick's claim – the first one, meaning the first one was no and void because it was a legitimately bargain for a second contract. Then what is your argument as to your client's cause of action? Well, I understand what you're saying, Your Honor, but you can't create a situation that requires the breach of a contract you've entered into so that the parties are required to enter into a secondary contract. And that, Your Honor, is what I'm arguing happened here. It's kind of like saying, well, we're breaching our own contract. That's time. May I complete my statement? Yeah, please finish your thought. It's analogous to saying that I'm going to force you to do something by my own breach, and that's what happened here. Thank you. Thank you. Thank you, counsel. At this time, if you could mute your audio and your video. And, Attorney Staub, if you could please unmute your audio and your video and introduce yourself on the record to begin your argument. You have 10 minutes. Good afternoon. May it please the Court. My name is Andrew Staub, and I represent the town of Little Compton, Richard Petren and Robert Mushen. I plan to argue that there is no breach of contract because the town and the union, the union as the representative of Mr. Melnick, consented at all times, cooperated at all times, and created a resolution for Mr. Melnick's IOD grievance that followed the collective bargaining agreement when they created the memorandum of agreement, which identified the process that would fairly resolve Mr. Melnick's question of whether or not his injury related to his job duties. And when Dr. Cava and Dr. Daniels would not nominate the third neutral doctor per the original memorandum of agreement, the union and the town cooperated again together. And it's not a form contract. The memorandum of agreement and the amendment number one are both very specific to the issue of Mr. Melnick, how it would be resolved, and the process really mirrored the collective bargaining agreement and avoided the arbitration that the union initially had elected to seek to resolve the IOD grievance. And that grievance, that IOD claim, did resolve itself with Dr. Keating's neutral opinion that Mr. Melnick's injuries were not related. How do you respond to opposing counsel's argument that her focus is on the first MOA and that that is the contract that she alleged, I assume that her client has standing to allege a breach of contract of that contract, notwithstanding a second MOA, which I assume she's alleging did not supersede the first one? because Dr. Cava and Dr. Daniels wouldn't nominate this third neutral doctor to be the tiebreaker. And so it really necessitated the amendment number one, which was dated October 18, 2018, which has a specific provision that deals with the memorandum of agreement part three, and it says that we will select an impartial physician from the Rhode Island courts website. And then it says specifically on the very fourth, the last provision of the amendment, that that person that would be selected by the town and the union, that that person would be Dr. Keating and that they mutually agree to it. I got that. You're not answering the argument that she's presenting to us today, though, which is there was a breach, not of that one that you're talking about right now, but of the first memorandum. And she has, her client has standing because he's a third party beneficiary to bring a cause of action based upon a breach of that one. Thank you, Your Honor. I can respond that the unwillingness of Dr. Cava was memorialized in the record of the emails between the union and Robert Mushin and that Dr. Cava would not perform her the specific term that he worked with Dr. Daniels to nominate the third. So that no longer was possible. We could not force the town, could not force Dr. Cava to perform that last function. And so that was memorialized in the amendment. So you're alleging impossibility of performance? Yes. You're not challenging the plaintiff's right to even bring a cause of action? I don't know that I would concede that. I believe that there was no breach. And we did put that in our brief. And I would say there is no breach, and so there should be not a cause of action. I'd like to move on beyond the breach of contract, which I don't believe, again, that there is a breach. And I don't believe the amendment to the MOA is somehow indicative of a breach. There was no way that Dr. Cava would perform, and that was encompassed in the amendment. And those did fairly resolve the grievance. But as to Mr. Melnick's retaliation claims under the whistleblower statute, Rhode Island whistleblower statute, and his claimed First Amendment protected conduct, under both claims, Mr. Melnick has not been able to show in the record, has not been able to show in his brief that on appeal, that these are connected to his termination. At all times, the union and the town sought to resolve Mr. Melnick's grievance. And Mr. Melnick points to his 2018 alleged assault, the police report, as one example of whistleblower conduct and one example of protected First Amendment speech. Separately, I'd like to first address the First Amendment protected speech. Mr. Melnick also claims that on February of 2018 that he created a point of order at the town council meeting regarding promotions. These are private matters. Mr. Melnick was solely concerned with his achieving a lieutenant rank, and they were not matters of public concern. But if Mr. Melnick is able to prove that, if your honors find that he has spoken on a matter of public concern, those statements were not any sort of substantial factor in the record on why he was dismissed or why he was terminated. He was terminated because he could not return to work because of his condition, his heart condition. And therefore, he didn't have any sick time or leave time remaining to apply. And it wasn't an immediate… How do you respond to his argument that no one else in the fire department similarly situated was ever fired because they couldn't return to work? Thank you, your honor. The argument that there are other similarly positioned persons, there were none. There was one example in the record of another firefighter who was terminated. But in fact, that firefighter left for another fire station. There were no similar examples where a firefighter was out, sick, unable to return to work, that that illness or that sickness was not related to his work, and that afterwards, the firefighter did not return to work, could not return to work, but had no accrued sick leave time remaining to apply against it. So my position is that there are no other examples of this to say that he's being selected, very specifically selected for some sort of discrimination. As to Mr. Melnick's whistleblower protection act claim, he specifically refers to the August 2017 violation that he claimed that the fire department vehicles were out of inspection by 14 months. The context of that conversation is critical. The analysis regards the form, the context, and the content. And in this case, the context was that Mr. Melnick, the record shows Mr. Melnick was rebutting an accusation of a safety violation himself that he had left an ambulance when there was a patient in route to the hospital. He left it out of convenience because it was a non-emergent call. And so he responded to the town. There was a private meeting. He responded that, in fact, instead of looking at my conduct, instead, look at how the town is violating safety protocol by not having the ambulances certified. The assertion that the town fired him, the town terminated him because he could not return to work, he had no leave time remaining, and there was no other option. And while the collective bargaining agreement does not explicitly state that termination is required if a firefighter cannot return to work and has no remaining sick leave time, and it's not an excused absence based on a work duty, the fact of the matter is that the collective bargaining agreement is for employment, and Mr. Melnick could not work. And so he could no longer be compensated, and he was removed. His wages were stopped on February 20, 2019, but he wasn't fired right away. March 6, 2019, after an additional opportunity to try to communicate what he planned to move forward was made with Mr. Melnick, and these were all in good faith. Many of them are emails, but they're still communications, and they still are in the record, and they show that there was no retaliation. Let's turn back to that first claim for a second. What evidence is there that the town reached out to Dr. Cava and asked him to assist in selecting the third doctor? Thank you, Your Honor. In the record, I can really only point to the amendment. I can say that there are emails in the record between the union and Mr. Mushin that say Dr. Cava is not willing to move forward. There are no emails in the record. There's nothing in the record that shows specifically the interaction between Dr. Cava and Mr. Mushin. That's time. That's time. I'm sorry. I didn't hear the end of what you said. Could you say that again? Apologies, Your Honor. There are no emails between Dr. Cava and Robert Mushin or the town that elucidate that communication, but it is encompassed in the amendment to the mirandum where it says specifically Dr. Cava was unwilling to perform that function. Thank you. Any more questions? No. Okay, thank you. At this time, Mr. Staub, please mute your audio and your video. Attorney Dio, please unmute your audio and reintroduce yourself on the record to begin. You have a two-minute rebuttal. Thank you. I'm again Attorney Dio for the appellant, Mr. Milnick. Your Honor, a couple of things in response. First of all, the record is clear. No one ever contacted the plaintiff's physician with respect to trying to get the third party neutral. And my point with respect to how the record is set up is very simply that in his deposition when asked, Mr. Mushin made it very clear that he had no contact with Dr. Cava. And what's being relied on now for this determination that there was this conduct is in fact an email he himself had. So it's not based on his own communication. So there's no competent evidence in the record that actually proves that there was any attempt to contact the town's physician. With that and there being no attempt to contact the plaintiff's physician, how we end up at a place where we have this sort of second agreement being entered into, it's because of the misconduct of the town. With respect to plaintiff's claims as a whistleblower, I think there's a couple of different things that we identify. One is his report to the police of being assaulted, which even if that doesn't specifically apply to a claim against the town or report of illegal action against the town, it is reporting the illegal action of an employee and that qualifies under 2850. What adverse actions are you saying under that whistleblower claim? Are you arguing that the defendants took? Is it just that your client was terminated? It's not just that my client was terminated. It's that every action that possibly could be taken to deny him IOD benefits. And we have other situations here where there's this contract that comes in. If you agree with my argument that it was intentionally breached by the town, that becomes part of what the conduct is. What do you mean every action was taken to deny him IOD benefits? You've pointed to the town's failure, according to you, to reach out to the town's doctor for the recommendation. What else are you pointing to? Well, in this instance, Your Honor, one of the things that is in the record is the statement from the town's first doctor, saying that his note doesn't say anything about whether it's related to work or not. It's only sort of these text messages that go thereafter. And he says, go ahead, send them my report. Well, the report doesn't say that. So is that actually putting forth the opinion? The other thing, Your Honor, and I will stop, is that if you look at the report from the third doctor, the supposed neutral, he doesn't have even the most basic records that Mr. Milnick put forward, and in fact says, in direct contradiction to Mr. Milnick's doctor, that he never had sort of this end-stemmy. Thank you. I'm sorry, he never had what? The end-stemmy, the heart attack, I believe. So I have a question, Judge Montecallo. Can we extend a little bit? Thank you. Yes. No, my opinion is that it is not job-related. Just send them a copy of my note. So are you stating that because it's so short that it's not part of a longer report or opinion that cannot be construed as an actual opinion of Dr. Cava? Your Honor, what I'm suggesting is that, and also that the fact he's saying just send them a copy of my report when the report doesn't address that particular issue. No, it says of my notes. I'm sorry. It says of my notes. Yes, ma'am, and I'm calling that a report. My apologies. Okay. But the notes say it's not related. The note does not comment on it, Your Honor. The notes say it's not work-related. Or the further response says it's not work-related. The further response says it's not work-related, but that is not the note, unless I'm misunderstanding something. The note is the report of his visit. Right, but you're alleging that there was never an opinion offered, and he eventually offered a short one, a terse one, but it was nonetheless an opinion. Okay, but he says send them a copy of my report, which doesn't deal with it. Maybe that is my argument, Your Honor. If there's nothing else? Any further questions? No. Thank you. Thank you. Thank you kindly, Your Honors. Thank you, Counsel. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting. Thank you. Thank you, Your Honors.